J-S07038-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NORMAN WILLIAMS | : | |
| | : | |
| Appellant | : | No. 661 MDA 2025 |

Appeal from the Judgment of Sentence Entered March 3, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0001368-2023

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: MAY 22, 2026**

Norman Williams ("Appellant") appeals *pro se* from the judgment of sentence imposed following his conviction for one count of Possession with Intent to Deliver ("PWID").  We affirm.

The trial court opinion summarized the testimony presented at Appellant's one-day jury trial:

> Detective Jason Paul ("Detective Paul") was involved with this investigation as part of the Vice Unit in Harrisburg City.  On August 25, 2020, Detective Paul met with a known confidential informant [("CI")].  The [CI] provided Detective Paul with information regarding an opportunity to purchase crack cocaine from the appellant.  Because the controlled purchase would take place outside of Detective Paul's jurisdiction of Harrisburg City limits, he notified the Dauphin County Drug Task Force to handle the case.  Detective Paul stated that he searched the [CI] and their vehicle prior to the controlled purchase, kept them in constant surveillance, and searched them again when the purchase was completed.  The crack cocaine was turned over to Detective Paul and he then turned it over to Trooper [Timothy] Hook who then sent it to Pennsylvania State Police for testing.

Trooper Timothy Hook ("Trooper Hook") of the Pennsylvania State Police became involved i[n] this investigation because Detective Paul reached out about a [CI] purchasing crack cocaine from the appellant in Susquehanna Township. Trooper Hook met with the [CI] with Detective Paul and one other trooper. The [CI] advised them that they could purchase a quantity of crack cocaine from the appellant. The [CI] provided a phone number for the appellant. At Trooper Hook's direction, the [CI] reached out to the appellant and ordered $80.00 worth of crack cocaine. Trooper Hook obtained a photograph of the appellant via PennDOT. The [CI] positively identified the appellant using the PennDOT photograph. The controlled purchase was then planned to take place at America's Best located in the 4100 block of North Front Street in Susquehanna Township[,] Dauphin County. The [CI] arrived at the location, and the appellant entered the passenger side of the [CI]'s vehicle. The [CI] then pulled into the breezeway of the hotel with the appellant while both remained under constant surveillance. The appellant then exited the [CI]'s vehicle and proceeded to the front parking lot of the hotel. Trooper Hook then met with the [CI] and Detective Paul. It was determined that the only individual that the [CI] had interaction with throughout the investigation was the appellant. The [CI] provided to Trooper Hook a plastic bag containing a white rock substance that Trooper Hook recognized to be crack cocaine. The white rock substance weighing 0.42 grams was sent to the Pennsylvania State Police lab for testing. The substance was determined to be cocaine. Based on his training and experience, Trooper Hook testified that the amount of cocaine in this instance is consistent with street-level drug sales. Trooper Hook further testified that the [CI] utilized for the controlled purchase with the appellant is a credible [CI] who has participated and assisted in over one hundred (100) narcotics investigations which have resulted in convictions. Trooper Hook testified that the twenty-seven (27) month delay in filing charges is not uncommon because deliberately waiting to file charges protects the [CI]'s identity and safety by creating a gap in time between the controlled purchase and the filing of charges.

Chief Detective Corey Dickerson ("Chief Dickerson") of the Dauphin County Investigation Division testified as an expert in lower-level and street-level drug trafficking. Chief Dickerson testified that it is very common to have a [CI] give a name to police which will then trigger an investigation. He further testified that a target, or the person selling the illegal drugs, is not commonly arrested at the time of the controlled purchase because

the investigation needs to continue to gather additional information and to protect the safety and identity of the [CI].

Trial Court Opinion ("TCO"), 8/27/25 at 4-6.

Appellant chose to represent himself at trial, and the jury convicted him of the sole count of PWID on December 10, 2024. The trial court sentenced Appellant to a period of two to four years' incarceration. Appellant waived his right to counsel, filed a timely notice of appeal, and filed a Pa.R.A.P. 1925(b) statement as directed by the trial court. Appellant raises the following issues on appeal:

(1). Was petitioner allowed an arrest warrant?

(2). Did the judge abuse her discretion of ignoring petitioner's pro-se pretrial filing/motion of his habeas corpus, motion to dismiss, and motion for suppression hearing for insufficient evidence, in violation of his due process rights?

(3). Did the Commonwealth meet their burden in presenting a prima facie case against petitioner?

(4) Did Commonwealth have probable cause to arrest petitioner?

(5). Was the district attorney allowed to use fabrication to justify indictment of petitioner?

(6) Was petitioner's Rule 600 violated?

(7). Was petitioner, who proceeded pro-se allowed his pre-trial discovery to help his defense?

(8). Did a *Baston* violation occur in petitioner's case?

(9) Was the verdict contrary to the weight and sufficiency of the evidence?

Appellant's Brief at 10 (reordered and capitalization omitted; otherwise verbatim).[1]

Before analyzing Appellant's claims, we note that this Court has attempted to address his claims to the best of our ability consistent with our willingness "to liberally construe materials filed by a *pro se* litigant[.]" ***Commonwealth v. Vurimindi***, 200 A.3d 1031, 1037 (Pa. Super. 2018). Simultaneously, "*pro se* status confers no special benefit upon the appellant." ***Id.*** We note that Appellant's unfamiliarity with the Rules of Appellate Procedure has made review more difficult. For instance, Appellant's argument section of his brief does not correspond to the list of questions presented.[2] Additionally, Appellant complains throughout about the procedures employed by the Commonwealth in charging this case; specifically, the failure to obtain an arrest warrant and the 27-month delay between the drug sale and filing the complaint. ***See*** Appellant's Brief at 17 ("[Appellant] never received a [w]arrant for his [a]rrest."), 20 ("The arresting officers never produced probable cause to arrest [Appellant], in violation of his due process rights."), 24 (alleging that the Commonwealth "intentionally altered and fabricated"

---

[1] Only some of the pages are numbered, and those numbers are not consistent. For ease of reference, all references to Appellant's brief will correspond to the physical page number. Thus, page 10 is found at page 10 of the scanned brief.

[2] For example, Appellant lists "claim 2" as "The District Attorney used fabrication to justify indictment of [Appellant]," Appellant's Brief at 24, whereas that claim appears as the third item in his questions presented.

dates "as to substitute the delayed filing of the indictment"), 37 (alleging that the trial court failed to meaningfully address his motions to dismiss; "The affidavit lacked sufficient facts of criminal activity to justify an arrest."), 43 (citing his "Petition for Habeas Corpus" in section addressing weight of the evidence), 55 (alleging, in portion of brief addressing whether evidence was sufficient to convict, that "the prosecut[or] stepped outside of her duties by maliciously prosecuti[ng] the case").

These complaints are incorporated throughout several of Appellant's issues, and we have reordered and combined them to facilitate review.

### Claims seeking dismissal due to procedural defects

We shall jointly address the reordered first through fourth claims. Appellant alleges that he first learned of these crimes on November 17, 2022. On that date, Appellant was serving a sentence at SCI-Chester for a burglary conviction and claims that he was summoned to an office "for a phone conference with a [j]udge who told him that he was being arrested for PWID."[3] Appellant's Brief at 12. Appellant argues that he never received an arrest warrant for this case and that "[t]he arresting officers never produced probable cause to arrest" him. *Id.* at 20.

---

[3] Following the verdict, the parties discussed time credit and the Commonwealth noted that Appellant had been incarcerated due to a burglary conviction and that Appellant was "incarcerated ... when this was charged." N.T., 12/10/24, at 98. Appellant stated that he had been continuously incarcerated since July 14, 2021. *Id.*

- 5 -

Appellant also alleges that the trial court ignored several of his pre-trial motions. While listing several types of motions in the question presented, Appellant's brief presents argument only with respect to his pre-trial motion for a writ of *habeas corpus*. He submits that the affidavit of probable cause in his case "lacked sufficient facts of criminal activity to justify an arrest." Appellant's Brief at 37. Specifically, Appellant challenges the reliability of the CI's information, as "[t]here was no indication in the affidavit that the informant or phantom CI had provided any past reliable information." *Id.* Trooper Hook did not "explain the manner in which the matter was brought to the attention of investigating authorities" nor did he "corroborate and verify the information supplied" by the CI. *Id.*

To the extent Appellant complains that the evidence was insufficient to present a *prima facie* case and hold him for trial, that claim has been rendered moot by his conviction. *See Commonwealth v. Lee*, 662 A.2d 645, 650 (Pa. 1995) (holding that an "adjudication of guilt renders moot any allegation that the Commonwealth failed to establish a *prima facie* case").

Turning to the various other issues raised by Appellant, it appears that Appellant believes that he was entitled to dismissal due to his belief that the Commonwealth failed to establish probable cause in the charging documents. *See* Appellant's Brief at 37-38 ("Therefore, accordingly, probable cause was never established in this case. The affidavit of probable cause, facially, failed to set forth sufficient facts establishing probable cause that [Appellant] sold

drugs."), 34 (prefacing argument for this claim with assertion that trial court failed to grant a motion to dismiss based on these defects).

First, Appellant's arguments about the CI's reliability are misplaced. The Commonwealth did not seek a search warrant for Appellant's home or an arrest warranted based on the CI's uncorroborated information. Instead, the authorities used the CI to arrange a drug sale, which, aside from the actual hand-to-hand delivery, the affiant personally witnessed.

Second, even if there were flaws in the affidavit of probable cause or the process leading up to Appellant's preliminary hearing, the magistrate judge ultimately determined that probable cause existed to hold Appellant for trial. Our Supreme Court has held that "any issue concerning a defect in the affidavit of probable cause becomes moot upon the district [magistrate judge]'s finding at the preliminary hearing that a *prima facie* case has been established." ***Commonwealth v. Chamberlain***, 30 A.3d 381, 423 (Pa. 2011) (citation omitted). ***See also Commonwealth v. Abdul-Salaam***, 678 A.2d 342, 347–48 (Pa. 1996) (concluding that assertion an arrest warrant failed to set forth probable cause "was moot in light of the preliminary hearing in which [the magistrate judge] found that a prima facie case existed").

Finally, while Appellant insists that he was entitled to discharge for these failures, Rule of Criminal Procedure 109 states otherwise:

> A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of these rules, unless the defendant raises the defect before the conclusion of the trial in a summary case or before the conclusion of the preliminary

- 7 -

hearing in a court case, and the defect is prejudicial to the rights of the defendant.

Pa.R.Crim.P. 109. Appellant, who was represented by counsel at the preliminary hearing stage, did not object before the conclusion of that proceeding. Appellant is not entitled to relief.

<u>Delay between incident and complaint</u>

Appellant's reordered fifth claim argues that the trial court failed to grant dismissal on the grounds that the Commonwealth caused prejudice by waiting 27 months to file charges.[4] He relies upon Rule of Criminal Procedure 587, and ***Commonwealth. v. Totaro***, 106 A.3d 120 (Pa. Super. 2014), a case applying that Rule.

As relevant herein, Rule 587 states: "Upon motion and a showing that an information has not been filed within a reasonable time, the court may order dismissal of the prosecution, or in lieu thereof, make such other order as shall be appropriate in the interests of justice." Pa.R.Crim.P. 587(A)(1).

---

[4] Appellant also argues in conjunction with this claim that the Commonwealth engaged in fraud because the criminal information "lists the offense date as 8-25-2022," instead of August 25, 2020. Appellant's Brief at 24. Appellant believes this was a ruse designed to hide the 27-month delay.

Appellant is correct that the criminal information lists August 25, 2022, but this appears to have been a typographical error. The affidavit of probable cause and the original criminal complaint all list the correct date of August 25, 2020.

Appellant argues that the trial court should have used this authority to dismiss his case.[5]

The trial court cited the statute of limitations in rejecting Appellant's claim. **See** TCO at 7 ("[Appellant] argued that the gap between the offense date and ... the filing of the complaint ... was too large. This argument was denied because the Commonwealth was well within the statute of limitations ... for filing charges[.]");42 Pa.C.S. § 5552(b)(2) ("A prosecution for any of the following offenses must be commenced within five years after it is committed ... Any offense punishable under [35 P.S. § 780-113(f)].").

We disagree with the trial court's analysis to the extent it holds that the Commonwealth's mere compliance within the applicable statute of limitations precludes granting dismissal. Although the trial court did not review the claim in terms of exercising discretion, we "may affirm a valid judgment based on any reason appearing as of record, regardless of whether it is raised by the appellee." **Commonwealth v. Moore**, 937 A.2d 1062, 1073 (Pa. 2007). For the reasons that follow, we conclude that had the trial court result is correct as it would have been an abuse of discretion to grant the motion to dismiss.

Ordering dismissal is an extraordinary remedy. **Cf. Commonwealth v. Bryan**, 818 A.2d 537, 541 (Pa. Super. 2003) (*en banc*) (reversing trial court's *sua sponte* dismissal of criminal charges; "Even in those situations where 'in the interests of justice' a dismissal is an appropriate consideration to remedy

---

[5] The Rule measures delay with respect to the filing of the information, whereas Appellant uses the earlier date of when the *complaint* was filed.

police or proseuctorial [*sic*] misconduct, it is not employed absent a showing of demonstrable prejudice."). The ***Totaro*** case cited by Appellant illustrates the type of prejudice warranting dismissal. In that case, a Pennsylvania State Police Trooper stopped Totaro on February 18, 2012, and charged him with driving under the influence ("DUI") and other offenses. During the incident, the trooper "seized 609 light blue tablets, which he then submitted to the State Police Laboratory on March 8, 2012." ***Id.*** at 121. Testing on the pills was completed on April 12, 2012. The DUI charges proceeded, with the case listed for a pretrial conference on July 3, 2012. ***Id.*** at 122. The case was then postponed several times. Meanwhile, "[i]n April of 2013, the Commonwealth discovered the report from the State Police Laboratory which identified the pills as a Schedule IV drug, and on April 15, 2013 the Commonwealth filed a motion for leave to amend the information ... to add a charge of" PWID. ***Id.*** The trial court denied the motion and the Commonwealth then filed a new complaint on June 27, 2013, followed by a criminal information on September 9, 2013, charging PWID. ***Id.*** The trial court denied the Commonwealth's motion to consolidate the two cases and then granted Totaro's motion to dismiss the information charging PWID. ***Id.***

The Commonwealth appealed and we affirmed. The Commonwealth made "no relevant argument on [dismissal], and instead, continue[d] to focus solely on the trial court's refusal to consolidate the two cases." ***Id.*** at 123. We agreed with Totaro that the trial court properly dismissed the charges under Rule 587(A)(1).

- 10 -

We believe the Commonwealth has failed to show due diligence in carrying out their responsibility to charge [Totaro] in a reasonable time for PWID. This failure has caused [Totaro] to waste over 12 months of precious trial preparation, where he believed he would be defending a Driving Under the Influence of Marijuana charge. On the eleventh hour, the Commonwealth has thrown a curveball at [Totaro], charging him with a completely different and very serious crime, over 12 months after the initial complaint was filed, which we find is unduly prejudicial to [Totaro]. This prejudice was further exemplified in the pre-trial transcript of October 24, 2013 when the Commonwealth indicated that they were going to be arguing that the defendant was under the influence of diazepam at the time of the incident. [Totaro's] counsel argued that all of the DUI reports, up until the present day, indicated that [Totaro] was believed to be under the influence of cannabis and now the argument has changed to being under the influence of diazepam, which is a completely different drug and requires completely different argument that has to be presented regarding conditions present with regard to those two substances. Further, [Totaro] testified that, since he has been subject to continued litigation, he has been unable to accept employment in his current field due to his inability to acquire security clearance with pending charges, which is now going on 2 years.

*Id.* at 123-24 (citations omitted).

Appellant argues that the Commonwealth likewise "failed to show due diligence in carrying out their responsibility to charge [Appellant] in a reasonable time for PWID." Appellant's Brief at 27 (quoting **Totaro**, 106 A.3d at 123). He claims prejudice in that "he was unable to prepare for trial, not knowing what he was doing and where he was 27 months ago[.]" *Id.* at 27.

Appellant's argument relies on a generic claim of prejudice. While we do not doubt it is difficult to find potential witnesses 27 months after the incident, the same point would hold true for 18 months, a year, and perhaps even six months. We do not agree that Rule 587(A) authorizes trial courts to micromanage the Commonwealth's prerogative to file charges by dismissing

- 11 -

cases due to difficulties in preparing for trial. We conclude that Appellant's generic claim fails to demonstrate prejudice and such a nonspecific claim is not the kind of demonstrable prejudice that warrants the extreme dismissal remedy.

We thus deem **Totaro** distinguishable as that case involved a specific type of prejudice, *i.e.*, the Commonwealth threw a "curveball" midstream by changing the theory of its case and, by doing so, misled the defendant as to what type of defense he would need to prepare. This caused him to "waste over 12 months of precious trial preparation[.]" **Id.** There is no comparable "curveball" in this case; the Commonwealth consistently alleged that Appellant sold drugs to a CI at the America's Best hotel in Susquehanna Township. We therefore affirm the trial court's order.

### Rule 600

We next address Appellant's claim that the trial court erred in denying his Rule 600 motion.[6] Rule 600 requires dismissing the charges "if the Commonwealth fails to bring the defendant to trial within 365 days of the filing

---

[6] Appellant concedes in his brief that he misunderstood Rule 600. **See** Appellant's Brief at 60 ("[Appellant] was arguing the untimeliness of the charges at the [m]otions [h]earing. Not knowing what Rule 600 meant, [Appellant] in answering a question from the [c]ourt" referenced **Totaro**. **Id.** Appellant claims that he "thought that a Rule 600 applies for that argument" and faults standby counsel for "not say[ing] anything" to clarify what Appellant intended to raise. **Id.** We add that Appellant continues to measure the one-year time period from the date of the underlying incident and not the date the complaint was filed. **Id.** at 63 ("[Appellant] was arguing that from 2020 to 2024, is too long. Which indicates a Rule 600 challenge.").

- 12 -

of the complaint … subject to certain exclusions for delays attributable to the defendant." ***Commonwealth v. Bradford***, 46 A.3d 693, 701 (Pa. 2012).

We begin with the "mechanical run date," which is 365 days after the complaint was filed. The charges were initiated on November 17, 2022, making the mechanical run date November 17, 2023. The docket indicates that the matter was initially set for trial on October 11, 2023. Thus, as of that date 328 days had elapsed.[7]

We conclude that October 11, 2023 through the ultimate trial date of December 10, 2024 are not included in the 365-day calculation, as the case was continuously postponed by Appellant after October 11, 2023. On October 11, 2023, December 1, 2023, January 16, 2024, February 20, 2024, April 2, 2024, the matter was continued with the notation "Trial Continued - Defendant Not Ready – Defendant." Each of these postponements is attributable to Appellant and thus is not included in our calculations. ***See Commonwealth v. Maddrey***, 205 A.3d 323, 327 (Pa. Super. 2019) ("When computing the number of pretrial days attributable to the Commonwealth under this rule, certain delays are excluded, such as … defense postponements, [and] express defense waivers of Rule 600[.]").

---

[7] The trial court uses the date of August 29, 2023, which is the date the parties selected the October 11, 2023 trial date. However, "time attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600" and is therefore included in the calculation of the 365 days. ***Commonwealth v. Mills***, 640 Pa. 118, 122, 162 A.3d 323, 325 (Pa. 2017). The error is immaterial.

- 13 -

At this juncture, trial was set for June of 2024. However, on May 3, 2024, the trial court scheduled a ***Grazier*** hearing due to Appellant wishing to waive his right to counsel and represent himself. As the trial court explains:

> Following the ***Grazier*** hearing on May 6, 2024, it was determined that the Dauphin County Public Defender's Office would remain as counsel for the appellant and the case was listed for the June 2024 trial term. On June 12, 2024, the appellant's trial was continued to the August 2024 trial term because the appellant was not ready for trial. On August 14, 2024, a second ***Grazier*** hearing was held at the appellant's request. Following the hearing, the appellant was permitted to proceed *pro se* with the Dauphin County Public Defender's Office remaining as standby counsel. On August 19, 2024, the appellant filed a motion to dismiss. A hearing was held on October 16, 2024, where the appellant's pre-trial motions were denied on the record. Following the hearing, this case was scheduled for trial in the October 2024 trial term. On October 23, 2024, the appellant filed a motion to reconsider his motion to dismiss and a motion for discovery. Due to these motions, trial was continued to the December 2024 trial term. Trial commenced on December 10, 2024.

TCO at 14.

We agree with this analysis. The postponements by Appellant's former counsel are not included in the Rule 600 calculations. ***Maddrey***, 205 A.3d at 327. Nor is the delay caused by litigating Appellant's *pro se* motions as a "defendant is … unavailable for trial if a delay in the commencement of trial is caused by the filing of the pretrial motion." ***Commonwealth v. Hill***, 736 A.2d 578, 587 (Pa. 1999). On this record, we agree that Appellant's desire to litigate several pre-trial motions and prepare for trial following his waiver of counsel caused delay and are therefore not included in the Rule 600

calculation. Accordingly, 328 days elapsed and the Commonwealth did not violate Rule 600.

Discovery issues

Appellant's reordered seventh claim alleges that the trial court erred by denying his October 23, 2024, motion to compel discovery. "Generally, on review of an order granting or denying a discovery request, an appellate court applies an abuse of discretion standard." ***Commonwealth v. Boich***, 982 A.2d 102, 109 (Pa. Super. 2009).

According to the trial court opinion, most of Appellant's discovery requests were addressed at an October 16, 2024 pre-trial hearing before Appellant filed his discovery motion.[8] Appellant's argument on appeal is limited to the trial court's failure to order disclosure of the following three items requested in his supplemental motion, which we quote verbatim:

> (1). Authenticated copies of Photos taken for Surveillance, with times & dates.
>
> (2). Legible photos to prepare for trial. (Petitioner was given photos from former Attorney Colton Whitener, that he could not see. They were dark and not legible.) (These same photos are part of the record).
>
> (3). Authenticated Criminal Complaints/Arrest Packet & Probable Cause Affidavitts. Investigatory Notes & Evidence of Alleged sale. Chain of custody of Alleged sale, & Evidence seized. Chain of Command receipts/logging Information For Evidence. Steps taken for Handling Evidence.

---

[8] While the trial court opinion and the Commonwealth's brief cite the notes of testimony of this hearing, this transcript does not appear in the certified record. The absence of this transcript does not impede our review.

Appellant's Brief at 13-14.

In his argument on appeal, Appellant largely quotes the discovery provisions codified at Rule of Criminal Procedure 573. However, Appellant does not explain how any of the requested items is governed by any particular part of the rule. Indeed, he simply alleges in conclusory fashion that the trial court's denial of his requests "are tantamount to a **Brady**[9] [v]iolation." **Id.** at 17.

Furthermore, it appears that Appellant was not seeking items in the Commonwealth's possession but instead complained that the Commonwealth's evidence was not trustworthy. For example, Appellant requested "[a]uthenticated" copies of photos with timestamps. We note that Appellant's opening at trial argued to the jury that he was not the man depicted in the photographs. N.T., 12/10/25, at 23 ("This is a mistake in identity case."). He added that the Commonwealth's delay in charging the case "didn't allow [him] to prepare an alibi" and that the photographs "are digital, ha[ve] no date or time on them, forcing you to ... just tak[e] the Commonwealth's word as to the times and dates."). **Id.** at 24. Thus, Appellant's arguments are less about what the Commonwealth had in its file and more about his dissatisfaction with the quality of the evidence.[10]

---

[9] **Brady v. Maryland**, 373 U.S. 83 (1963).
[10] As to the chain-of-custody claims, "[a] defendant seeking relief from a discovery violation must demonstrate prejudice." **Commonwealth v. Causey**, 833 A.2d 165, 171 (Pa. Super. 2003) (citation omitted). Because Appellant's defense rested on a case of mistaken identity, any error in this regard would not have caused prejudice.

We conclude that Appellant has waived his argument by failing to develop an argument in his brief. **See Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009) (holding that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived") (citations omitted); **see also** Pa.R.A.P. 2119(a)-(c) (argument section shall include "such discussion and citation of authorities as are deemed pertinent.").

### **Batson** claim

In his eighth issue presented Appellant argues that the Commonwealth violated **Batson v. Kentucky**, 476 U.S. 79 (1986).

> **Batson** set[s] forth a three-part test for examining a criminal defendant's claim that a prosecutor exercised peremptory challenges in a racially discriminatory manner: first, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

**Commonwealth v. Fletcher**, 861 A.2d 898, 909 (Pa. 2004) (quoting **Commonwealth v. Harris**, 817 A.2d 1033, 1042 (Pa. 2002)).

According to Appellant, the Commonwealth "struck all of [Appellant's] 'Black' [j]urors, which left [Appellant] with an 'all white' jury. [Appellant]

chose black jurors, and they were struck by the prosecutor." Appellant's Brief at 30.

Following the conclusion of *voir dire*, the trial court asked: "[Appellant], is [the jury] acceptable for the defense?" N.T., 12/4/24, at 26. Appellant replied, "No. I want some diversity, some black folks on the jury. I just don't want an all-white jury. I want to mix it up." ***Id.*** The court replied, "All right. I understand your objection." ***Id.*** Appellant then reiterated that he "need[ed] some black people." ***Id.***

We conclude that Appellant failed to preserve a ***Batson*** challenge. "[I]if defense counsel fails to raise a contemporaneous ***Batson***-type objection at trial, a ***Batson*** claim is not preserved[.]" ***Commonwealth v. Blakeney***, 108 A.3d 739, 768 (Pa. 2014). Appellant did not raise a "***Batson***-type" challenge.[11] We agree with the Commonwealth that Appellant's "comment was editorial in nature and constituted a mere request or comment."

_____

[11] Regarding a ***Batson*** challenge:

> [t]he defendant does not satisfy ***Batson's*** first step of *prima facie* evidence merely by showing that the prosecutor used a number of strikes against venirepersons of one race. Nor is it sufficient to merely point out the fact that the prosecutor rejected a higher percentage of African–American potential jurors than non-African-American potential jurors. Instead, the defendant must preserve a full and complete record of the asserted ***Batson*** violation, as it would otherwise be impossible to conduct meaningful appellate review of the motivations of prosecutors in individual cases without such a record.

***Commonwealth v. Holmes***, 327 A.3d 307, 313(Pa. Super. 2024) (quotation mark and citation omitted).

Commonwealth's Brief at 24. Appellant expressed dissatisfaction with the composition of the jury, but he did not allege, as **Batson** requires, that the Commonwealth had exercised peremptory strikes in a racially discriminatory manner.

Appellant argues in his brief that this Court "should be reminded that [Appellant] represented himself, with a standby [a]ttorney that said nothing. This standby counsel was ineffective[.]" Appellant's Brief at 31. **See also** Appellant's Reply Brief at 2 ("And the [j]udge should have taken his answer as a denial of a basic constitutional right and exercise its 'duty to determine if the defendant has established purposeful discrimination.'"). However, "the law is clear that a defendant who chooses to represent himself has no recourse if he or standby counsel has been ineffective." **Commonwealth v. Fletcher**, 986 A.2d 759, 778 (Pa. 2009). Furthermore:

> Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing.

**Commonwealth v. Adams**, 882 A.2d 496, 498 (Pa. Super. 2005) (citations omitted). Despite the fact that Appellant was *pro se*, his failure to properly raise a **Batson** objection at trial waives the claim. **Blakeney, supra.**

Sufficiency and weight

In his final point of error, Appellant jointly argues that the evidence was insufficient to convict and that the verdicts were against the weight of the evidence.

Beginning with sufficiency of the evidence, we consider whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Melvin**, 103 A.3d 1, 39 (Pa. Super. 2014) (citation omitted). "Because evidentiary sufficiency is a matter of law, our standard of review is *de novo*[,] and our scope of review is plenary." **Commonwealth v. Brooker**, 103 A.3d 325, 330 (Pa. Super. 2014) (citation omitted).

Appellant argues that the evidence is insufficient because the Commonwealth's witnesses did not see any actual hand-to-hand transaction between CI and Appellant inside the vehicle. **See** Appellant's Brief at 46. He also complains that "no video was ... taken of the alleged transaction," and thus his conviction relies on "the uncorroborated evidence of a single witness." **Id.** Furthermore, Appellant suggests that because the CI was not strip searched, the bag in which the drugs were located could have been on the CI's person before the incident.

The Commonwealth is not required to offer direct evidence of Appellant's delivery of drugs to the CI as it may prove delivery by circumstantial evidence. **See Commonwealth v. Bricker**, 882 A.2d 1008, 1015 (Pa. Super. 2005) ("In determining whether there is sufficient evidence to support a PWID

conviction, all facts and circumstances surrounding the possession are relevant, and the Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence.") (citation omitted). The trial court explained why the evidence sufficed to establish Appellant's guilt beyond a reasonable doubt:

> Here, the Commonwealth presented evidence that on August 25, 2020, Detective Paul met with a known [CI]. The [CI] provided Detective Paul with information regarding an opportunity to purchase crack cocaine from the appellant. Trooper Hook met with the [CI] with Detective Paul and one other trooper. The [CI] advised them that they could purchase a quantity of crack cocaine from the appellant. The [CI] provided a phone number for the appellant. At Trooper Hook's direction, the [CI] reached out to the appellant and ordered $80.00 worth of crack cocaine. Detective Paul stated that he searched the [CI] and their vehicle prior to the controlled purchase, kept them in constant surveillance, and searched them again when the purchase was completed. The [CI] arrived at the location, and the appellant entered the passenger side of the [CI]'s vehicle. The [CI] then pulled into the breezeway of the hotel with the appellant while both remained under constant surveillance. The appellant then exited the [CI]'s vehicle and proceeded to the front parking lot of the hotel. Trooper Hook then met with the [CI] and Detective Paul. It was determined that the only individual that the [CI] had interaction with throughout the investigation was the appellant. The [CI] provided to Trooper Hook a plastic bag containing a white rock substance that Trooper Hook recognized to be crack cocaine. Thus, the Commonwealth presented evidence that the appellant possessed the crack cocaine by showing that the [CI]'s person and vehicle were searched both before and after meeting with the appellant. After meeting with the appellant, under constant surveillance by police, the [CI] returned with the crack cocaine he purchased from the appellant. Because the Commonwealth presented evidence that sufficiently establishes each element of the crime charged, we find that the evidence was sufficient to sustain a guilty verdict.

TCO at 12-13.

We agree with the trial court's analysis. Appellant's argument fails to view the evidence in the light most favorable to the Commonwealth, as required by our standard of review. He instead draws inferences in his favor, such as his claim that the CI may have had the drugs on him all along or that the failure to strip search the CI undermines the Commonwealth's evidence.[12] He also broadly challenges the trial court's failure to grant his motion to disclose the identity of the CI because the CI "was the only eye witness to the entire transaction." Appellant's Brief at 72.[13] "[T]he ultimate question of evidentiary sufficiency ... [is] whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Brown*, 52 A.3d 1139, 1164 (Pa. 2012) (quotation marks and citation omitted). That standard is met here.

Next, within this same claim Appellant separately challenges the weight of the evidence supporting the verdict. We need not recite the standard of review as Appellant fails to acknowledge the distinction between sufficiency and weight, as he argues that "Trooper Hook admitted that he did not see any transaction of any drug deal." Appellant's Brief at 42. This is an argument assailing the sufficiency of the evidence, not its weight. *See Commonwealth*

---

[12] Appellant cites several cases in which a CI was strip searched before an arranged transaction. Of course, those cases do not hold that a strip search is **required** for the Commonwealth to establish guilt beyond a reasonable doubt.

[13] Appellant raises this claim as part of his sufficiency argument and does not develop a separate argument that the trial court abused its discretion in failing to disclose the CI's identity. *See generally Commonwealth v. Koonce*, 190 A.3d 1204, 1209 (Pa. Super. 2018).

*v. Bennett*, 827 A.2d 469, 481 (Pa. Super. 2003) ("A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence.") (quotation marks and citation omitted). As the Commonwealth proved Appellant's guilt through circumstantial evidence, the evidence is sufficient.

Having rejected all of Appellant's claims, we affirm the trial court's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/22/2026